UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MODERN AMERICAN RECYCLING SERVICE, INC., | ) ) ) |
| Interpleader Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. 19-cv-09301 ) ) Section "B" |
| EPIC APPLIED TECHNOLOGIES, LLC, EPIC COMPANIES, LLC, NAVARRO CAPITAL PARTNERS, LLC, RANGER OFFSHORE, INC., AND CENTRAL BOAT RENTALS, LLC, | ) ) Division "3" ) ) ) ) |
| Interpleader Defendants. | ) ) |

**MEMORANDUM IN SUPPORT OF REMAINING CLAIMANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS AWARDING THE INTERPLEADED FUNDS TO EPIC APPLIED TECHNOLOGIES, LLC AND NAVARRO CAPITAL PARTNERS, LLC**

**MAY IT PLEASE THE COURT**

Interpleader Defendants and Counterclaim Plaintiffs, Epic Companies, LLC ("Epic Companies"), Navarro Capital Partners, LLC, ("Navarro"), and Epic Applied Technologies, LLC ("Epic Applied," and together with Navarro, the "Remaining Claimants") (all together, "Movants," and each a "Movant") jointly submit this Memorandum supporting their *Joint Motion for Judgment on the Pleadings Awarding the Interpleaded Funds to Epic Applied Technologies, LLC and Navarro Capital Partners, LLC* (the "Motion"). Pursuant to the Motion, the Movants seek a judgment on the pleadings awarding the $632,608.90 in funds interpleaded (the "Interpleaded Funds") by Modern American Recycling Service, Inc. ("MARS") to the Remaining Claimants, specifically consisting of an award to Epic Applied in the amount of $593,807.90, and an award to Navarro in the amount of $38,801.00. In support thereof, the Movants represent as follows:

1

**FACTS AND PROCEDURAL HISTORY**

### i. *The Interrelationship of the Movants*

Epic Companies was the parent company to a number of interrelated entities, including Epic Applied and Navarro, which together provide or provided heavy lift, diving and marine, specialty cutting and well plugging and abandonment services.[1] Epic Applied is still a subsidiary of Epic Companies, but Navarro is no longer.[2] Epic Companies is a privately held limited liability company. It was formed in March of 2018 by the divestiture of TETRA Technologies, Inc.'s ("Tetra") offshore services division, which included Tetra's subsidiary, Tetra Applied Technologies, LLC ("Tetra Applied"). After the divestiture, Tetra Applied became a subsidiary of Epic Companies and was renamed as Epic Applied (hereinafter, Epic Applied and Tetra Applied are referred to together as the "Applied Entities"). Epic Companies' members are Orinoco Natural Resources, LLC and Oakridge Energy Partner, LLC ("Oakridge").

Throughout 2018, Epic Companies expanded its operations through various acquisitions. Relevant here, Epic Companies, through Navarro, purchased certain assets of Ranger Offshore, Inc. ("Ranger") on August 8, 2018, including "all [of Ranger's] accounts receivable, prepaid items, and all other current assets,"[3] pursuant to an Asset Purchase Agreement ("Ranger APA"). In June of 2019, Epic Companies' corporate structure resembled the schematic below:

---

[1] *See* Decl. of Kelton C. Tonn in Support of Chapter 11 Petitions and First Day Pleadings, *In re Epic Companies, LLC*, No. 19-34752 (Bankr. S.D.TX., Aug. 27, 2019).
[2] However, they still share a common member.
[3] Answer of Ranger Offshore, Inc., at ¶ 1.

2

**EPIC Companies, LLC**

[Organizational chart showing EPIC Companies, LLC corporate structure. Orinoco Natural Resources, LLC (VA) owned by Thomas M. and Ana M. Clarke 100% JTWROS, holds 50.0% of EPIC Companies, LLC (DE). Oakridge Energy Partners LLC (DE), member David Wiley, holds 50.0% of EPIC Companies, LLC. USCGC Bramble, LLC (MI) connects to Orinoco. Acqua Liana Capital Partners, LLC (TX) holds 25% Warrants. EPIC Companies, LLC subsidiaries include: EPIC Alabama Holdings, LLC (DE) with EPIC Alabama Maritime Assets, LLC (DE) and EPIC Recycling Services, LLC (DE); EPIC Maritime Asset Holdings, LLC (DE) with EPIC Alabama Shipyard, LLC (DE) and EPIC Alabama Recyclers, LLC (DE) (with Lease of Yard Acreage and Transfer Assets (Shipyard & Drydocks)); EPIC Diving & Marine Services, LLC (DE) with EPIC Applied Technologies, LLC (DE), Cedar Creek Aviation, LLC (VA), EPIC Specialty Services, LLC (DE), and EPIC San Francisco Shipyard, LLC (VA); King Aire, Inc. (WV) with Zuma Rock Energy Services, LLC (TX) and EPIC Alabama Steel, LLC (DE); Navarro Capital Partners, LLC (TX) with Ranger Offshore International, LLC (DE) (100.0%), Ranger Offshore Mexico S. de R.L. de C.V. (Mex Operating Co.) (99.0% / 1.0%), Remuda Shipping S. de R.L. de C.V. (Mex Navigation Co.) (49.0% / 99.97%), Remuda Offshore S. de R.L. de C.V. (Mex Labor Co.) (.03%), and Gerson Arreola MX National 51.0%.]

Then, in July of 2019, Epic Company's secured lender, White Oak Global Advisors, LLC ("White Oak"), foreclosed on Epic Company's equity interests in Navarro, among other entities. White Oak then transferred the equity interest in Navarro to Oakridge. As a result, Epic Companies no longer owns (directly or indirectly) Navarro.[4]

On August 26, 2019, Epic Companies and a number of its subsidiary entities, including Epic Applied, filed for bankruptcy under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Southern District of Texas. As of this petition date, Epic Companies' corporate structure and their bankrupt status[5] is as follows:

---

[4] *See* Decl. of Kelton C. Tonn in Support of Chapter 11 Petitions and First Day Pleadings, *In re Epic Companies, LLC*, No. 19-34752 (Bankr. S.D.TX., Aug. 27, 2019).
[5] *See id.*

3



## ii. Movants' Relationship with MARS

MARS's business is to purchase, transport, process, and resell scrap from marine assets, particularly vessels and decommissioned oil platforms.[6] As a part of this business, MARS uses barges to receive materials from customers who are decommissioning offshore platforms. Upon receipt of the components parts of these decommissioned platforms, MARS uses the barges to deliver the parts to onshore facilities, where the parts are scrapped and recycled.[7]

MARS scrapped materials sold to it by Ranger and the Applied Entities throughout 2018.[8] After the Ranger APA was executed, the value of scrap proceeds sold by Ranger accrued to the benefit of Navarro. MARS performed its services to Ranger (though, ultimately to the benefit of

---

[6] Interpleader Complaint at ¶ 14, ECF 1.
[7] *Id.*
[8] *Id.* at ¶ 21.

4

Navarro), pursuant to a Master Services Agreement dated July 27, 2017, it had entered into with Ranger (the "Ranger MSA").[9] Meanwhile, MARS performed its scrapping services on behalf of Epic Applied pursuant to a Master Service Agreement dated October 4, 2013, which it had entered into with Tetra Applied (the "Tetra MSA"). The Ranger MSA and the Tetra MSA are each referred to herein individually as an "MSA" and collectively as the "MSAs." After Tetra Applied became Epic Applied, MARS and Epic Applied entered into the Amendment No. 1 To the Master Service Agreement on June 11, 2018 (the "Tetra MSA Amendment").[10] The Tetra MSA Amendment indicated that Tetra Applied Technologies had become Epic Applied, but otherwise did not affect the terms of the Tetra MSA.[11]

The MSAs provide the terms according to which MARS would provide services to the Applied Entities and Ranger (later, to the benefit of Navarro). Pursuant to the terms of the MSAs, throughout 2018, component parts of marine assets were delivered to MARS, who provided scrapping and recycling services to the Applied Entities, Ranger, and Navarro. In accordance with the MSA's payment provisions, invoices were generated by MARS, the Applied Entities, Ranger, and Navarro. The invoices issued by MARS were for the value of its scrapping services provided to the Applied Entities, Ranger or Navarro.[12] Invoices issued by Ranger, the Applied Entities, and Navarro were for the scrap value of the component parts delivered to MARS.[13]

According to MARS's summary of the invoices, MARS owes Ranger $592,402.95 for scrap proceeds purchased—after it is credited for the value of its scrapping services provided to both Ranger and the Applied Entities.[14] Additionally, according to MARS' own accounting,

---

[9] *See id.* at ¶ 17.
[10] *Id.* at ¶ 19.
[11] *Id.*
[12] *Id.* at ¶ 23.
[13] *Id.*
[14] *Id.* at ¶ 25.

MARS owes Navarro $40,205.95 for the scrap value of two vessels it processed, the M/V JOE G JR and the M/V SAVANNAH RIVER.[15] Accordingly, added together, MARS has pleaded it owes, in total, $632,608.90 for scrap proceeds deriving from component parts it acquired from Ranger, the Applied entities, and/or Navarro.

Epic Companies, using a total calculated from an aggregation of invoices issued by Ranger, the Applied entities, and Navarro, sent a demand letter in its own name to MARS in January of 2019, demanding $1,071,691.18 for amounts due for scrap sold to MARS by Movants and Ranger in 2018.[16] Around the same, Navarro and Epic Companies sent a letter demanding payment for the scrap value for the M/V SAVANNAH RIVER and M/V JOE G vessels.[17]

On January 30, 2019, Central Boat Rentals, Inc. ("Central Boats") filed a Verified Complaint with Request for Issuance of Process of Maritime Attachment and Garnishment under Federal Rules of Civil Procedure, Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, Rule B, against Epic Companies and Ranger, with MARS as garnishee, in the United States District Court for the Northern District of Alabama.[18] Central Boat alleged therein that it is owed a principal amount of $619,819.07 from Ranger and/or Epic Companies; it sought to garnish any debts owed by MARS to Ranger and/or Epic Companies.[19]

On March 11, 2019, Epic Applied filed a complaint and Rule B Attachment pursuant to the Supplemental Rules of the Federal Rules of Civil Procedure, seeking attachment of the LA PRINCESA as security for a sum in the amount of $1,078,012, plus interest, owed by MARS to Epic Applied pursuant to the Tetra MSA.[20]

---

[15] *See id.* at ¶ 27.
[16] *See id.* at ¶ 26.
[17] *See id.* at ¶ 28.
[18] *Id.* at ¶ 33.
[19] *Id.*
[20] *Id.* at ¶ 30.

6

### iii.     *Interpleader Action*

On April 11, 2019, MARS filed its Interpleader Complaint, naming Central Boat, Ranger, Epic Companies, and the Remaining Claimants as defendants and seeking "to resolve competing claims or potential claims to funds owed by MARS to Ranger and/or [Epic Companies and/or the Remaining Claimants] and sought to be garnished by Central Boat."[21] As MARS has admitted, "[t]he disputed funds arise out of scrap processed and purposed by MARS from Ranger and/or Epic Companies and/or Epic Applied and/or Navarro."[22]

On May 13, 2019, the Movants filed an *Answer and Counterclaim* (the "Answer"), admitting that MARS owed the Interpleader Funds to the Movants arising out of scrap which was processed and purchased by MARS.[23] The Movants further asserted a counterclaim against MARS for unpaid scrap proceeds related to materials sent to MARS in the total amount of $1,078,012. This sum which includes the $632,608.90 in Interpleaded Funds, plus an additional $445,403.00 owed by MARS to the Movants for scrap proceeds, as indicated by invoices kept by the Movants.[24]

On May 13, 2019, Ranger answered the Interpleader Complaint by disclaiming any present interest in the Interpleaded Funds as "[a]ny claim belonging to Ranger is subject to the terms of the Asset Purchase Agreement . . . I[ing] the amounts that Ranger may have been entitled to from MARS at issue in this [I]nterpleader [C]omplaint."[25]

On September 19, 2019, MARS filed an *Ex Parte Motion to Dismiss Central Boat Rentals, LLC Without Prejudice*.[26] In the Motion, MARS explained that it had named Central Boat in the Interpleader on account of Central Boat's attempt to attach the debt represented through the

---

[21] *Id.* at ¶ 1.
[22] *Id.* at ¶ 25.
[23] Epic Defendants' Answer and Counterclaim at p. 1, ECF Doc. 18
[24] *Id.* at p. 8.
[25] Answer of Ranger Offshore, Inc. at ¶ 1, ECF 20.
[26] Motion to Dismiss, ECF 56.

Interpleader Funds in prior litigation. Following Central Boats' voluntary dismissal with prejudice, MARS stated that "it appears that the reasons for MARS having identified Central Boat as an [i]nterpleader-[c]laimant are moot, so MARS therefore requests that this Court dismiss Central Boat as a claimant in this interpleader."[27] The Court granted the Motion and dismissed Central Boat on September 23, 2019.[28]

### iv.     *Intervention Claims*

Two parties, Abe's Boat Rentals, Inc., ("Abe's") and SEACOR Marine, L.L.C. (individually "SEACOR," and together with Abe's, the "Intervenors"), filed *Motions to Intervene*,[29] making claims to some or all of the Interpleader Funds on account of transactions wholly-separate from the contract under which MARS was obligated to remit payments for scrap proceeds to Ranger or Tetra Applied or their respective successors or assigns. On September 6, 2019, Magistrate Judge Douglas entered an order denying the Intervenors' request to intervene and dismissed those parties after finding that Intervenors "have no legal interest in the contract between MARS and the Epic Defendants."[30]

### v.     *The State of the Interpleader Proceeding*

As this proceeding stands to date, only four defendants remain party to this interpleader proceeding: Ranger, Epic Companies, Epic Applied, and Navarro. However, Ranger has disclaimed any interest in the Interpleaded Funds in its answer, and Epic Companies now likewise disclaims any interest in the Interpleaded Funds. Accordingly, the only remaining parties claiming any interest in the Interpleader Funds are the Remaining Claimants (Epic Applied and Navarro).

---

[27] Motion to Dismiss at 1, ECF 56.
[28] Order on Motion to Dismiss, ECF 57.
[29] *See* Abe's Motion to Intervene, ECF 24, SEACOR's Motion to Intervene, ECF 39, SEACOR's Supplemental Motion to Intervene, ECF 41.
[30] Order Denying Motions to Intervene, ECF 55 at 9.

## APPLICABLE LAW

### *i.   Legal Standard Applicable to Motions for Judgment on the Pleadings*

An interpleader proceeding may be properly resolved by the same means as any other case, including by summary judgment,[31] default judgment,[32] or judgment on the pleadings.[33] The standard for granting a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is identical to the standard for granting a 12(b)(6) motion to dismiss.[34] The well-pleaded allegations in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff,[35] but courts will not "accept as true conclusory allegations or unwarranted deductions of fact."[36]

### *ii.   Jurisdiction and the Interpleader Process*

Jurisdiction is not at issue in this proceeding. MARS has brought this interpleader proceeding under Rule 22 of the Federal Rules of Civil Procedure, and alternatively, 28 U.S.C. § 1335. Rule interpleader must be "based upon the general jurisdiction statutes applicable to civil actions in the federal courts."[37] MARS pleaded this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1333 because the MSAs are maritime contracts and, alternatively, that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the stake is larger than $75,000 and there is complete diversity as between MARS and the defendant-claimants now that Central Boat has been dismissed. Movants admitted this Court has subject matter jurisdiction in

---

[31] *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999).
[32] *Usable Life Co. v. Gann*, No. 1:09-CV-77, 2009 WL 4348588, at *3 (E.D. Tenn. Nov. 24, 2009).
[33] *See, e.g.*, *Sun Life Assur. Co. of Canada v. Kimble*, No. CIV S-06-2041 EFB, 2007 WL 3313448, at *6 (E.D. Cal. Nov. 6, 2007).
[34] *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).
[35] *Id.*
[36] *Great Plains Trust Co. v. Morgan Stanley Dean Witter,* 313 F.3d 305, 313 (5th Cir. 2002).
[37] 7 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1702 (Mary Kay Kane ed., 3d ed. 2019).

their answer.[38]

There is only one ground for a plaintiff to bring a Rule 22 interpleader proceeding: persons have "claims that may expose [the] plaintiff to double or multiple liability."[39] If this ground is established, the claimants "may be joined as defendants and required to interplead."[40] "Joinder for interpleader is proper even though . . . the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical."[41] Courts have noted rule interpleader "does not even require a 'stake' or 'fund' as such," and an "action will lie where all that is involved is the threat of multiple liability on what is in fact but a single claim or obligation."[42]

In a typical interpleader proceeding there are two stages.[43] For rule interpleader,[44] the first stage is primarily a test to determine "whether the stakeholder legitimately fears multiple vexation directed against a single fund."[45] More specifically, the court resolves whether: "1) two or more persons have claims against the interpleading party, and 2) as a result, the interpleading party is or may be exposed to multiple liability."[46] If a proper ground for interpleader is established, then the court proceeds to the second stage and decides the respective rights of the claimants as to the stake.[47] Division of the interpleader proceeding into two stages is merely the normal practice

---

[38] Epic Defendants' Answer and Counterclaim at p. 2, ECF Doc. 18.
[39] FED. R. CIV. P. 22.
[40] *Id.*
[41] *Id.*
[42] *Xerox Corp. v. Nashua Corp.*, 314 F. Supp. 1187, 1189 (S.D.N.Y. 1970); *see also Fitzgerald v. Nationwide Life Ins. Co.*, No. 06 CIV. 5656 (AKH), 2007 WL 1659200, at *2 (S.D.N.Y. June 6, 2007) (noting Rule 22 is less specific than its statutory counterpart and that courts have relaxed the requirement that the plaintiff have a clearly identifiable *res* in its possession in a rule interpleader proceeding).
[43] *Rhoades*, 196 F.3d at 600.
[44] The jurisdictional prerequisites for statutory interpleader are more complex, though it operates in the same fashion once this threshold has been met. *See* 28 U.S.C. § 1335 (describing a requisite stake with a value of $500 or more).
[45] 7 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1704 (Mary Kay Kane ed., 3d ed. 2019).
[46] *United States v. First Nat. Bank of Bellaire*, No. H-82-2567, 1983 WL 1666, at *3 (S.D. Tex. Aug. 12, 1983) (citing *Dunbar v. United States [74-2 USTC P 9744]*, 502 F. 2d 506 (5th Cir. 1974)).
[47] *Auto Parts Mfg. Mississippi, Inc.*, 782 F.3d at 194.

though, and "bifurcation is not mandatory."[48] "[T]he entire action may be disposed of at one time."[49] Expedited resolution is most obviously appropriate in a case where "the second stage may be adjudicated at summary judgment," because "there is no genuine issue of material fact,"[50] or, as in this case, by judgment on the pleadings because judgment is warranted as a matter of law.

## ARGUMENT

### i. The First Stage: Interpleader is Proper

There is no dispute that interpleader is proper in this case. The propriety of interpleader is to be determined at the time of commencement.[51] As MARS pleaded in the Interpleader Complaint, at the time of filing, it had received multiple demands for the Interpleaded Funds[52] by Epic Companies, Epic Applied, Navarro, and Central Boat.[53] In the first stage, the merits of these various claims is irrelevant.[54] Moreover, that Central Boat's claim was "quite tenuous" does not even distinguish this matter from the "usual case."[55] Additionally, Movants acknowledge that each of them, in addition to Central Boat, have made claims on MARS for the Interpleaded Funds, and thereby have appeared to expose MARS to multiple liabilities. Movants' respective demands on the Interpleaded Funds were good faith attempts to collect from the same pool of funds through various interrelated entities. Although it was the intent of the Movants, as a collective, to have one satisfaction for the total value of proceeds of scrap sold to MARS, Movants acknowledge that by

---

[48] *New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983).
[49] *Id.*
[50] *C.f. Rhoades*, 196 F.3d at 600 (generally discussing the circumstances where summary judgment in an interpleader proceeding is appropriate).
[51] *Auto Parts Mfg. Mississippi, Inc.*, 782 F.3d at 193-94.
[52] To the extent a "single, identifiable fund" is required to the subject of the interpleader, *Auto Parts Mfg. Mississippi, Inc.*, 782 F.3d at 194, one obviously exists in this case: the fund derived from the scrap value of component parts of maritime assets sold by the Movants and Ranger (to the benefit of Movants).
[53] Interpleader Complaint at ¶ 30, ECF 1.
[54] *Auto Parts Mfg. Mississippi, Inc.*, 782 F.3d at 194.
[55] *See id.* (citing 7 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1704 (Mary Kay Kane ed., 3d ed. 2019)).

making demands through multiple entities, MARS was faced with competing liabilities and the "threat of multiple vexation by future litigation."[56] Now that all potential claimants to the Interpleader Funds have been properly noticed and have appeared before the Court, the Court may proceed to the second stage of interpleader.

> ## ii. The Second Stage: The Remaining Claimants are Entitled to the Interpleader Funds

In the second stage, each of the answering defendants interpleaded by the disinterested interpleader now occupies the role of plaintiff—with his own claim to be litigated against those of the other claimants.[57] In other words, it is the claimants who are now adverse to one another, rather than being mutually aligned against the stakeholder.[58] Additionally, because the stakeholder, MARS, pleaded that it is disinterested, it is not regarded as a plaintiff in the second stage as it is not a claimant.[59] As such, MARS lacks standing to challenge the actual disposition of the proceeds.[60] Normally, this alteration to the roles of the parties makes it desirable for the court to divide the interpleader proceeding into distinct stages. But bifurcation is unwarranted in cases where a lack of dispute between claimants eliminates the need for judicial determination of the answering defendants' entitlement to the stake.[61]

For example, in an interpleader proceeding where no defendant enters an appearance and as a result they default, these subsequent defaults "expedite [the interpleader's] conclusion by

---

[56] *Tittle v. Enron Corp.*, 463 F.3d 410, 424 n. 10 (5th Cir. 2006) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364 (5th Cir. 1983)).
[57] *See* 7 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1714 (Mary Kay Kane ed., 3d ed. 2019)).
[58] *See Reconstruction Finance Corp. v. Aquadro*, 7 F.R.D. 406 (W.D. Pa. 1947).
[59] *See Nationwide Mut. Fire Ins. Co. v. Eason*, 736 F.2d 130, 133 (4th Cir. 1984) ("Having failed to plead an interest in the fund, [the stakeholder] cannot now claim that it is entitled to the bond proceeds.").
[60] *Id.* (finding that stakeholder who had disclaimed interest in fund could not reappear as a claimant after defendants failed to answer because said stakeholder and moreover lacked standing to challenge whom proceeds were distributed to).
[61] *See Guarantee Co. of N. Am. USA v. Barrera*, 908 F. Supp. 2d 39, 41 (D.D.C. 2012), *Gulf Coast Galvanizing, Inc. v. Steel Sales, Co., Inc.*, 826 F.Supp. 197, 203 (S.D. Miss. 1993).

obviating the normal second stage."[62] The same result obtains when all but one claimant stands after the other claimant-defendants default, as was observed by U.S. Court of Appeals for the Fourth Circuit in *Nationwide Mutual Fire Insurance Co. v. Eason*.

In *Nationwide*, the titular insurance company, Nationwide, was the obligor of a bond purchased by a grain dealer, Autry.[63] Under state law, Nationwide became obligated to pay the bond to the State of North Carolina law for the benefit of unpaid grain farmers upon Autry's failure to recompense the farmers.[64] Autry meanwhile filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.[65] Faced with the prospect of excessive liability, Nationwide filed an interpleader action with the bankruptcy court where Autry's bankruptcy proceeding was pending, and Nationwide named the farmers and the State as defendants.[66] Nationwide pleaded in its complaint that it had no interest in the bond funds. The defendants took no responsive action, and on motion by Nationwide, a default judgment was entered discharging defendants' claims, but no action was taken as to the bond proceeds.[67] The trustee of Autry's estate subsequently motioned to intervene so that the trustee could apportion the interpleaded funds to Autry's creditors. Nationwide opposed intervention, arguing that the proceeds were not property of the estate and the fund should be returned to Nationwide. The bankruptcy court found it would be inequitable to deliver a fund to the Nationwide which Nationwide had claimed to be disinterested in and the court ordered the bankruptcy trustee to apportion the fund for distribution.[68]

The Fourth Circuit affirmed the bankruptcy court's refusal to remit the fund back to Nationwide. In so doing, the Court noted:

---

[62] *Guarantee Co. of N. Am. USA*, 908 F. Supp. 2d at 42 (citation omitted).
[63] 736 F.2d at 131.
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.* at 132.
[68] *Id.*

13

> Following the default of the named defendants, the trustee was the single remaining claimant to the fund. Although interpleader is proper only where there are two or more claimants to a fund, we do not think that the court in this case was bound to dismiss the action following the entry of the default judgment. Clearly, if all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund. A similar result should obtain where, as here, a party properly intervenes as claimant following the entry of a default judgment against the original parties.[69]

The Fourth Circuit's common-sense observation that the interpleaded fund may be summarily distributed to the last-claimant-standing without a trial has been commonly practiced by district courts resolving default judgment motions, and also summary judgment motions and motions for judgment on the pleadings.[70]

Moreover, where more than one claimant answers and is before the court, the apportionment can be fixed with the consent of the remaining claimants.[71] For example, in *Capitol Indemnity Corp. v. Freeland Construction Co., Inc.*, the stake at issue was a performance bond securing performance on a construction project, the stakeholder was the bonding company, and the claimants were the subcontractors who had worked on the project.[72] The parties moved jointly for default to be entered against non-answering claimants and for funds be distributed to the answering claimants on a pro-rata basis.[73] The court, upon finding that the Federal Rules of Civil Procedure had been complied with and "in light of the parties' consent," granted the requested relief, and approved a pro-rata distribution of the funds from the registry of the court to the

---

[69] *Id.* at 134 n.4.
[70] *EAN Holdings, LLC v. Ishola*, No. CV 2:13-26841, 2015 WL 13622490, at *1 (S.D.W. Va. Aug. 4, 2015) (granting default judgment in favor of the only non-defaulting claimant), *Conseco Life Ins. Co. v. Murphy-Moreno*, No. 6:13-CV-161-ORL-31, 2013 WL 3353325, at *1 (M.D. Fla. July 2, 2013) ("Since the only other interested party has defaulted, the Court will grant summary judgment in favor of the [remaining claimant]."), *Shuqualak Lumber Co. v. Hardin*, No. CIVA 1:08CV297-P-S, 2009 WL 2767676, at *2 (N.D. Miss. Aug. 27, 2009) (granting default judgment), *Sun Life Assur. Co.*, 2007 WL 3313448, at *4 (granting judgment as a matter of law and awarding stake to remaining claimant).
[71] *See, e.g.*, *Capitol Indem. Corp. v. Freeland Constr. Co., Inc.*, No. 3:17-CV-936-TLW, 2017 WL 10486950, at *3 (D.S.C. Oct. 4, 2017) (granting default judgment motion and then distributing funds to claimants on pro-rata basis without specifying the proper procedural mechanism).
[72] WL 10486950, at *3.
[73] *Id.* at *2-*4.

14

claimants.[74]

In this case, judgment on the pleadings is warranted. All claimants have consented to the requested distribution. MARS has pleaded that it owes $632,608.90 for scrap proceeds and has interpleaded Ranger, Epic Companies, Epic Applied, and Central Boat to "litigate their claims between themselves for the Disputed Funds."[75] Central Boat has already been dismissed from this proceeding. MARS,[76] Ranger,[77] and Epic Companies,[78] have all disclaimed any interest in the Interpleaded Funds. It is therefore undisputed that the Remaining Claimants are the only parties who have any interest in the Interpleaded Funds. Navarro has pleaded that Navarro is entitled to $38,801.[79] Epic Applied has pleaded it is entitled to at least $1,078,012 for scrap proceeds, inclusive of the Interpleaded Funds which MARS has disclaimed any interest in.[80] Accordingly, the Remaining Claimants—as the only parties with standing to litigate the allocation of the Interpleaded Funds—ask the court to award the Interpleaded Funds as follows:

(a) $593,807.90 to be awarded to Epic Applied, and

(b) $38,801.00 to be awarded to Navarro.

## **CONCLUSION**

The Movants are entitled to judgment as a matter of law. There is no conflict between the

---

[74] *Id.* at *3.
[75] Interpleader Complaint at ¶ 38, ECF 1.
[76] "MARS is the stakeholder in the funds but without interest in the funds." *Id.* at ¶ 9, ECF 1.
[77] Ranger admits . . . that MARS owes money arising out of scrap processed and purchased by MARS, but . . . any claim belonging to Ranger is subject to the terms and conditions of an Asset Purchase Agreement . . . by which Navarro purchased certain assets of Ranger, including 'all accounts receivable, prepaid items, and all other current assets' of Ranger as of the effective date of the Agreement, which, based on the allegations contained in the Complaint, includes the amounts that Ranger may have been entitled to from MARS at issue in this interpleader complaint." Ranger's Answer at ¶ 1, ECF 20.
[78] Epic Companies, as joining as a Movant to this Motion, concedes that MARS is not directly liable to Epic Companies for any portion of the Interpleaded Proceeds. Any interest that Epic Companies may have in the Interpleaded Funds is through its subsidiary, Epic Applied.
[79] Epic Defendants' Answer and Counterclaim, at ¶ 12, ECF Doc. 18, ("[P]lus interest, including prejudgment interest, at the maximum rate permissible by law.").
[80] Epic Defendants' Answer and Counterclaim, at ¶ 6-7, ECF Doc. 18.

pleadings of any of the parties before the Court. MARS has pleaded it owes $632,608.90 for scrap proceeds. Ranger has pleaded it is not entitled to any of these proceeds. The Movants have admitted that MARS owes them $632,608.90. Movants have further pleaded that of this $632,608.90 sum, $38,801.00 is owed to Navarro, and the remainder is owed to Epic Applied. Accordingly, there is no issue of fact, judgment is proper as a matter of law, and the Court should allocate the Interpleaded Funds in accordance with the pleadings and as requested herein.

*Respectfully submitted,*

**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**

/s/ *Benjamin W. Kadden*
BENJAMIN W. KADDEN (LA 29927)
JAMES W. THURMAN (LA 38494)
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
E-mail:bkadden@lawla.com; jthurman@lawla.com;

*Attorneys for Epic Companies, LLC, Epic Applied Technologies, LLC, and Navarro Capital Partners, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March, 2020, a copy of this pleading has been served upon all known counsel of record via the Court's CM/ECF filing system.

/s/    Benjamin Kadden